# Exhibit B

Westlaw.

Not Reported in F.Supp.2d
2002 WL 1586891 (D.Del.)
**(Cite as: 2002 WL 1586891 (D.Del.))**

Page 1

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
In Re: BCI PANCAKE HOUSE et al., Debtor.
BCI PANCAKE HOUSE et al., Appellant,
v.
MORRIS, JAMES, HITCHINS & WILLIAMS, et al., Appellee.
**No. 95-205 (JKF), 95-206(JKF), 95-207(JKF), 95-208(JKF), 02-97-GMS, 96-198.**

June 18, 2002.

MEMORANDUM AND ORDER

SLEET, District J.

I. INTRODUCTION

**\*1** On November 7, 1996, the appellants, BCI Pancake House, Inc., Blue Coat Inn, Inc., Patriot Enterprises LLC, and Hospitality Organizational Management Enterprises, Inc. (collectively, "BCI"), filed the above-captioned adversary proceeding alleging legal malpractice. In an order entered on November 27, 2001, Judge Fitzgerald concluded that: (1) the law firm defendants, Morris, James, Hitchens and Williams, did not commit malpractice, and (2) the alleged conduct of the defendants was not the proximate cause of any harm to the plaintiffs. The Clerk of the District Court docketed BCI's appeal on February 6, 2002. On June 3, 2002, the court dismissed the appeal for failure to prosecute.

Presently before the court is BCI's motion for reconsideration of the court's June 3, 2002 order. For the following reasons, the court will deny this motion.

II. STANDARD OF REVIEW

As a general rule, motions for reconsideration should be granted only "sparingly." See Karr v. Castle, 768 F.Supp. 1087, 1090 (D.Del.1991). In this district, these types of motions are only granted if it appears that the court has patently misunderstood a party, has a made a decision outside the adversarial issues presented by the parties, or has made an error not of reasoning, but of apprehension. See, e.g., Shering Corp. v. Amgen, Inc., 25 F.Supp.2d 293, 295 (D.Del.1998); Brambles USA, Inc. v. Blocker, 735 F.Supp. 1239, 1240 (D.Del.1990) (citing Above the Belt, Inc. v. Mel Bonhannan Roofing, Inc., 99 F.R.D. 101 (E.D.Va.1983)); see also Karr, 768 F.Supp. at 1090 (citing same). Moreover, even if the court has committed one of these errors, there is no need to grant a motion for reconsideration if it would not alter the court's initial decision. See Pirelli Cable Corp. v. Ciena Corp., 988 F.Supp. 424, 455 (D.Del.1998).

III. DISCUSSION

On June 3, 2002, the court entered an order dismissing the present action for failure to prosecute. In support of that order, the court noted that BCI had failed to file its opening brief within fifteen days of the date the appeal was docketed. Nor had BCI sought an extension of time in which to file its brief. Moreover, although BCI's brief in opposition to the motion to dismiss for failure to prosecute was due on May 24, 2002, it failed to timely file that brief as well. Finally, the court found that dismissal was warranted because BCI had a history of indifference to its obligation to the court and the Bankruptcy Court.

BCI now requests that the court reconsider its order for two reasons. First, BCI maintains that it addressed the motion to dismiss for failure to prosecute by way of a declaration in opposition which was docketed on June 1, 2002. Second, BCI argues that the attorney of record, Henry A. Heiman, ("Heiman"), has been ill and unable to assist the lead counsel, Gregory A. Sioris ("Sioris"), in the prosecution of this appeal. Based on these facts, BCI now requests that the court reopen the appeal. It further requests that the court place the appeal on an indefinite stay until such time as Heiman is able to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2002 WL 1586891 (D.Del.)  
**(Cite as: 2002 WL 1586891 (D.Del.))**

Page 2

proceed with the appeal. [FN1] The court will address each of these contentions in turn.

> FN1. Sioris and Heiman estimate that they will be prepared to file BCI's brief in thirty to sixty days. They further suggest that they will inform the court when they can actually proceed.

***2** The court does not dispute that BCI filed an untimely opposition to the motion to dismiss for failure to prosecute. Nor does the court dispute that it was unaware that BCI planned to file this opposition at the time it began the process of granting the motion to dismiss. Nevertheless, even had the court become aware of the declaration in time to halt its decision-making process, the court's initial decision would remain unchanged.

Specifically, the declaration fails to adequately address BCI's procedural defaults in this case. Indeed, the declaration merely states that, because Heiman has become "indisposed" due to a medical condition, he was unable to assist Sioris in the timely prosecution of the appeal. It further states that, had the court issued a scheduling order, Sioris would have contacted the court regarding Heiman's condition. The court concludes that neither of these arguments explain Heiman's and Sioris' absolute failure to contact the court for approximately four months. Of particular concern to the court in this regard is Sioris' attempt to place the onus on the court to contact the parties. Bankruptcy Rule 8009 is clear on the time limitations for filing opening briefs on appeal. Nowhere in that unambiguous language does it allow for the parties to unilaterally decide to ignore its mandates. *See In re Stephenson,* 1996 U.S. Dist. LEXIS 1774, *4 (S.D.N.Y. Feb. 20, 1996) (rejecting the argument that waiting for a scheduling order mitigated failing to adhere to Rule 8009's filing requirements).

Thus, the uncontested fact remains that BCI has failed to file its opening brief, in a timely fashion or otherwise. It further failed to timely file its brief in opposition to the motion to dismiss. The court will not now sanction BCI's utter disregard for the court's time and docket management concern by permitting it to continue to execute untimely filings at its convenience.

Accordingly, because consideration of BCI's untimely declaration would not have changed the court's ruling, the court declines to vacate its June 3, 2002 order on this ground. *See Pirelli,* 988 F.Supp. at 445.

BCI next urges the court to reconsider its ruling solely because Heiman has been ill and thus unable to assist the lead counsel in preparing the case. However, as discussed above, Heiman and Sioris had an affirmative duty to inform the court of these circumstances and to request an extension of time in which to file BCI's opening brief. Instead, Heiman and Sioris opted to wait for approximately four months before contacting the court. [FN2] Regardless of Heiman's ill health, the court will not put its imprimatur on such behavior.

> FN2. Furthermore, in his May 28, 2002 and June 14, 2002 declarations, Sioris fails to address why he, as lead counsel in this case, was unable to fulfill his obligation as an attorney without Heiman's aid.

IV. CONCLUSION

For these reasons, IT IS HEREBY ORDERED that:

1. BCI's motion for reconsideration (D.I.15) is DENIED.

2002 WL 1586891 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d
2004 WL 838715 (Del.Super.)
**(Cite as: 2004 WL 838715 (Del.Super.))**

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
Rose **HUNTER**, Appellant
v.
**FIRST USA**/BANK ONE, and Unemployment Insurance Appeal Board, Appellees.
**No. 03A-050005PLA.**

April 15, 2004.

Upon Appelant's Appeal from a Decision of the Unemployment Insurance Appeal Board. Reversed.

Rose Hunter, Wilmington, Delaware, Appellant, pro se.

Employers Unity, Inc., Arvada, Colorado, for First USA/Bank One, Appellee.

Mary Page Bailey, for Unemployment Insurance Appeal Board, Appellee.

ORDER

ABLEMAN, J.

**\*1** This Order, issued this 15th day of April, 2004, is in consideration of Appellant's pending appeal from the Unemployment Insurance Appeal Board's decision denying her benefits, and in further consideration of the Court's January 9, 2004 Order instructing the New Castle County Office of the Prothonotary to send an amended notice of appeal to the Appellee due to Appellee's failure to respond to the original mailed notice of appeal. Reference is made to that Order [FN1] for a complete account of the chronological events, factual circumstances and administrative agency proceedings leading up to the instant appeal.

FN1. *Hunter v. First USA/Bank One,* 2004 WL 249578 (Del.Super.Ct.).

Upon consideration of the Appellant's petition pursuant to Title 19, Section 3323(a) of the Delaware Code, concerning an aggrieved party's request for judicial review by this Court of a final decision issued by the Unemployment Insurance Appeal Board, and in consideration of Appellee's failure to respond in furtherance of the Court's January 9, 2004 Order, it appears to this Court that:

1.) Rose Hunter ("Appellant") was employed as an imager clerk with First USA/Bank One ("Appellee" or "Bank One") from November 2002 until January 8, 2003. The Appellant was terminated for falsifying her September 11, 2002 job application. Appellant's discharge stemmed from her answering "no" to the question of whether she had ever been convicted of, or plead guilty to, an offense other than a minor traffic violation. As part of its federally mandated hiring procedures, Appellee performed a background check on Appellant. The F.B.I. background investigation revealed that Appellant had been convicted of issuing a bad check on February 5, 1986. Appellant contended that she was unaware of the 1986 criminal charge.

2.) After her termination from Bank One, Appellant immediately filed for unemployment compensation benefits. On February 6, 2003, the Claims Deputy of the Delaware Department of Labor, Division of Unemployment Insurance, made the determination that Appellant was disqualified from receipt of benefits. After examining all the facts surrounding Appellant's discharge, the Claims Deputy concluded that Appellant had been discharged for just cause because Appellant's actions rose to a level of wanton or wilful misconduct.

3.) On February 21, 2003, Appellant timely filed an appeal from the Claims Deputy's decision. A hearing before an Appeals Referee of the Delaware Department of Labor, Division of Unemployment Insurance, was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2004 WL 838715 (Del.Super.)
**(Cite as: 2004 WL 838715 (Del.Super.))**

Page 2

conducted on March 12, 2003. The Appellant testified before the Appeals Referee. Stu Tomkins, the employer representative from Employers Unity, Inc., testified on behalf of Appellee. On March 18, 2003, the Appeals Referee issued his decision, affirming the decision of the Claims Deputy that Appellant was discharged for just cause and was disqualified from receipt of unemployment benefits.

4.) On March 26, 2003, pursuant to 19 *Del. C.* § 3318, Appellant filed a timely appeal from the Appeals Referee's decision to the Unemployment Insurance Appeal Board ("Board"). In lieu of a formal hearing, the Board conducted a review of the evidence presented to the Appeals Referee, the Referee's decision, and the Appellant's Notice of Appeal. The Board issued its decision on April 16, 2003, affirming the decision of the Appeals Referee. The Board's decision became final on May 5, 2003. On May 7, 2003, Appellant filed a timely notice of appeal from the Board's decision to this Court.

**\*2** 5.) By letter, dated May 29, 2003, the Board notified Appellee that the Appellant had appealed from the Board's decision and enclosed a copy of the appeal with the notice. By letter, dated June 30, 2003, the Prothonotary's Office notified Appellee that the appeal was ready for briefing and that Appellee must be represented by local counsel in this Court in order to respond to Appellant's opening brief. The letter instructed Appellee to have its attorney file an entry of appearance with the Court. By letter, dated June 30, 2003, the Prothonotary's Office also notified Appellee that its answering brief was due by August 11, 2003. All letters were addressed to Appellee, c/o its representative, Employers Unity, Inc., P.O. Box 749000, Arvada, Colorado 80006. Appellee failed to respond to any of the letters and/or notices.

6.) Appellant timely filed her opening brief on July 21, 2003. Subsequently, the Prothonotary's Office mailed a Final Delinquent Brief Notice to Appellee at the same address above, notifying Appellee that it must have its attorney file an entry of appearance with the Court and that its answering brief was overdue. Pursuant to Rule 107(e), the Court issued its Order, dated September 15, 2003, stating that, since no further action of record had been taken and no further information had been provided, the Court would make its determination of the issue on the papers that had been filed.

7.) In its January 9, 2004 Order, the Court denoted that a significant clerical error may have been made in the mailing process, potentially resulting in Appellee never receiving any type of notification of the appeal. The record indicates that, from the time that the Appellant appealed the Claims Deputy's decision, Employers Unity, Inc. has represented the Appellee. All correspondence, notices and transmittals sent to Appellee during the entire pre-appeal and post-appeal proceedings have been sent to Appellee, c/o its representative, Employers Unity, Inc., P.O. Box 749000, Arvada, Colorado 80006.

Specifically, the record reflects that, Stu Tomkins, the hearing representative from Employers Unity, Inc., was the duly authorized representative for Bank One. The record also designates that Stu Tomkins maintains a contact address of: Employers Unity, Inc., Lower Level Suite 10, 115 W. State Street, Media, Pennsylvania 19063. A review of the transcript of the hearing indicates that Stu Tomkins was present at the hearing at all times and actively represented the interests of Appellee. Also, the initial appearance in the record of the "Arvada, Colorado" address for Appellee is found in the May 29, 2003 letter from the Board to Appellee informing Appellee of the appeal. All future correspondence to Appellee utilized this address. In its January 9, 2004 Order, the Court opined that, based on Stu Tomkins' involvement on behalf of Appellee during the appeals process, all notices and correspondence should have been more properly sent to Mr. Tomkins at the local Employers Unity, Inc.'s office located in Media, Pennsylvania. The Court believed that there existed some potential confusion and miscommunication surrounding Appellee's lack of response to the appeal process because the Prothonotary's Office may have been sending all letters and notices to the Appellee at an incorrect address.

**\*3** 8.) Pursuant to the Court's January 9, 2004 Order, the Prothonotary's Office sent an amended notice of appeal, via certified mail return receipt requested, to Appellee, c/o Mr. Stu Tomkins, Employers Unity, Inc.,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2004 WL 838715 (Del.Super.)  
**(Cite as: 2004 WL 838715 (Del.Super.))**

Page 3

Lower Level Suite 10, 115 W. State Street, Media, PA 19063. [FN2] The returned certified mail receipt green card indicates that Employer's Unity, Inc. received the amended notice of appeal on January 20, 2004. It was signed by Sally Baraka, on behalf of Employer's Unity, Inc. As of the date of this Order, neither Employer's Unity, Inc., nor Bank One, has responded to the amended notice of appeal. No entry of appearance has been entered on behalf of Appellee, or on behalf of Appellee's representative, nor has either filed an answering brief with the Court.

> FN2. The amended notice contained: 1) a copy of the original Notice of Appeal filed by Appellant on May 7, 2003; 2) a request that Appellee have its local counsel file an entry of appearance with the Court; 3) a copy of Appellant's opening brief; and, 4) a copy of each of the two letters sent by the Prothonotary's Office on June 30, 2003 to the Appellee.

9.) In its January 9, 2004 Order, the Court made note that "it is the Court's opinion that the entry of a default judgment against Appellee would not be appropriate. The instant case is distinguishable from those cases in which an employer has failed to appear at a Board hearing and the Board dismisses the case for failure to diligently prosecute." [FN3] Likewise, as the Court contended, "[i]n *Gorrell v. Division of Vocational Rehabilitation,* this Court held that an entry of default judgment by the Court is not appropriate on an appeal from an administrative agency." [FN4]

> FN3. *Hunter,* 2004 WL 249578, at *4 (citing *Love v. MBNA America,* 2001 WL 112101 (Del.Super.Ct.)).
>
> FN4. *Id.* at *4 (citing *Gorrell v. Div. of Vocational Rehab.,* 1996 WL 453356, at *2 (Del.Super.Ct.)).

With these legal precepts in mind, the Court seeks guidance in this matter within the legal parameters established by our own Superior Court Civil Rules. Rather than enter an order of default judgment, Superior Court Civil Rule 72(i) provides that the Court may, "sua sponte, or upon a motion to dismiss by any party," order an appeal to be dismissed. The grounds for ordering a dismissal include untimely filing of an appeal, appealing an unappealable interlocutory order, failing to diligently prosecute the appeal by a party, failing to comply with any rule, statute or order of the Court, or for any other reason deemed by the Court to be appropriate. [FN5] In light of the circumstances that have unfolded before the Court, it has become evident to the Court that, for whatever unidentified reason, Bank One has failed to diligently prosecute the appeal in this case. Even after the Court afforded the Appellee an additional opportunity to respond by requesting that Appellee's representative be served with an amended notice of appeal, almost three months have elapsed, and Appellee still has not responded to Appellant's notice of appeal from the Board's decision.

> FN5. Super. Ct. Civ. R. 72(i).

At the time the Court penned its January 9, 2004 opinion, it believed that to dismiss the appeal, predicated on Appellee's failure to diligently prosecute the appeal, would not be an equitable resolution. Citing to *Gorrell,* this Court previously noted that "[t]o issue an order of dismissal would 'preclude Claimant from obtaining a review of this matter." ' [FN6] This Court further advocated that, "[b]ased on the principles underlying the objectives of equitable justice and finality of judgment, to dismiss the appeal without attempting to notify the Appellee of the existence of the appeal at an alternative address, would be inequitable." [FN7] In consideration of Appellee's inexplicable failure to actively pursue a response to Appellant's appeal, and in recognition of the Court's attempts to serve the principles of equity and equality under the law, the Court still finds that a dismissal of Appellant's appeal would be an unsatisfactory panacea to the dilemma presently before the Court.

> FN6. *Hunter,* 2004 WL 249578, at *4 (quoting *Gorrell,* 1996 WL 453356, at *2).
>
> FN7. *Id.*

**\*4** The nature and scope of Super Court Civil Rule 72(i) is structured to apply to appeals before this Court,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2004 WL 838715 (Del.Super.)  
**(Cite as: 2004 WL 838715 (Del.Super.))**

Page 4

initiated by an aggrieved party, from a decision of an administrative board, commission, court, etc. Rule 72(i) addresses the causality and remedial aspects of an ultimate dismissal in terms of its impact on an appellant, or moving party, who is directly affected by having the appeal dismissed, but does not fully address those instances when the adverse, or accountable party, is an appellee. Rule 72(i) provides for an appellant who may request a voluntary dismissal, a stipulated voluntary dismissal with court approval, or a court ordered dismissal, in this case, to the detriment of the Appellant.

In other words, to dismiss Appellant's action, not because of any related culpability on her part, but because Appellee failed to pursue a conscientious prosecution of the appeal, would be counterintuitive and provide an inequitable outcome for the Appellant. Denial of a dismissal was appropriate, for example, in *Church v. Ferguson,* when the Court denied the employee's request to dismiss the employer's appeal for allegedly being untimely filed. [FN8] The Court found that, pursuant to 19 *Del. C.* § 3323(a), the employer had timely filed a notice of appeal from the Board's decision to award benefits to the appellant, as a result of the employer having failed to appear at the Board hearing. [FN9] Similarly, in *Harris v. Mountaire Farms of Delaware,* it was proper for the Court to affirm the Board's decision dismissing the claimant's appeal for failure to prosecute because the "claimant did not attend the Board hearing and exhaust her administrative remedies prior to approaching this Court." [FN10] Unlike the cases referenced above, it appears that the case at bar falls into the exceptional category of an appeal to this Court, where the statutory failure to prosecute befalls the Appellee.

>   FN8. *Church v. Ferguson,* 2003 WL 21537995 (Del.Super.Ct.).
>
>   FN9. *Id.* at *1.
>
>   FN10. *Harris v. Mountaire Farms of Delaware,* 2003 WL 22853425, at *2 (Del.Super.Ct.).

In view of Rule 72(i)'s limited applicability, Superior Court Civil Rule 107, when considered in tandem with Rule 72, provides the Court with the most appropriate remedy to address a non-responsive appellee. In essence, Rule 107(e) provides that "if any brief, ... or any other paper which is or should be a part of a case pending in this Court, is not served and filed ... in accordance with any order of the Court ..., the Court may, in its discretion, dismiss the proceeding if the plaintiff is in default, ..., or take such other action as it deems necessary to expedite the disposition of the case." [FN11] Thus, it is evident to the Court that Rule 107(e) inextricably vests in the Court the power to reverse the Board's decision for failure of the Appellee to file its answering brief. With this in mind, it would prove meaningful in the instant case for the Court to first substantiate its requisite jurisdictional control to consider Appellant's appeal and the ensuing circumstances, in order to find in favor of a reversal of the Board's decision.

>   FN11. Super. Ct. Civ. R. 107(e).

**\*5** Judicial review of a Board finding "shall be permitted only after any party claiming to be aggrieved thereby has exhausted all administrative remedies." [FN12] A hearing before the Board is the final administrative remedy. [FN13] In light of the fact that the Board's decision became final on May 5, 2003, the appeal has progressed beyond the jurisdiction of the Board. [FN14] With regard to the Court's permitted standard of review, the Delaware Supreme Court, and this Court, repeatedly have emphasized the limited appellate review of factual findings of an administrative agency. [FN15] The function of the reviewing Court is limited to determining whether substantial evidence supports the Board's decision regarding findings of fact and conclusions of law and is free from legal error. [FN16] Substantial evidence is that evidence from which an agency fairly and reasonably could reach the conclusion it did. [FN17] It is more than a scintilla but less than a preponderance. [FN18] When reviewing a decision on appeal from an agency, the Superior Court does not weigh the evidence, determine questions of credibility, or make its own factual findings. [FN19] The Court's responsibility is merely to determine if the evidence is legally adequate to support the agency's factual findings. [FN20] If the agency or Board's

Not Reported in A.2d  
2004 WL 838715 (Del.Super.)  
**(Cite as: 2004 WL 838715 (Del.Super.))**

Page 5

decision is supported by *substantial evidence,* the Court must sustain the decision of the Board, even though it would have decided otherwise had it come before it in the first instance. [FN21]

> FN12. Del.Code Ann. tit. 19, § 3322(a) (1995 & Supp.2002).
>
> FN13. Del.Code Ann. tit. 19, § 3320 (1995 & Supp.2002).
>
> FN14. *Henry v. Dep't of Labor,* 293 A.2d 578 (Del.Super.Ct.1972) (holding that the Unemployment Insurance Appeal Board retains jurisdiction of a matter until the Board's decision becomes final).
>
> FN15. *Industrial Rentals, Inc. v. New Castle County Bd. of Adjustment,* 2000 WL 710087 (Del.Super.Ct.), *rev'd on other grounds,* 776 A.2d 528 (Del.2001); *Public Water Supply Co. v. DiPasquale,* 735 A.2d 378, 382 (Del.1999).
>
> FN16. Del.Code Ann. tit. 29, § 10142(d) (1997 & Supp.2002); *See also Soltz Management Co. v. Consumer Affairs Bd.,* 616 A.2d 1205, 1208 (Del.1992); *Mellow v. Bd. of Adjustment of New Castle County,* 565 A.2d 947, 954 (Del.Super.Ct.1988), *aff'd,* 567 A.2d 422 (Del.1989); *Janaman v. New Castle County Bd. of Adjustment,* 364 A.2d 1241 (Del.Super.Ct.1976), *aff'd,* 379 A.2d 1118 (Del.1977); *M.A. Harnett, Inc. v. Coleman,* 226 A.2d 910 (Del.1967); *Johnson v. Chrysler Corp.,* 213 A.2d 64, 66-67 (Del.1965); *General Motors Corp. v. Freeman,* 164 A.2d 686, 688 (Del.1960).
>
> FN17. *Mellow v. Bd. of Adjustment of New Castle County,* 565 A.2d at 954 (citing *National Cash Register v. Riner,* 424 A.2d 669, 674-75 (Del.Super.Ct.1980)).
>
> FN18. *Id.* at 954 (citing *Olney v. Cooch,* 425 A.2d 610, 614 (Del.1981)); *Downes v. State,* 1993 WL 102547, at *2 (Del.) (quoting *Breeding v. Contractors-One-Inc.,* 549 A.2d 1102, 1104 (Del.1988)).
>
> FN19. *Johnson,* 213 A.2d at 66.
>
> FN20. Del.Code Ann. tit. 29, § 10142(d) (1997 & Supp.2002).
>
> FN21. *Mellow,* 565 A.2d at 954 (citing *Kreshtool v. Delmarva Power & Light Co.,* 310 A.2d 649, 653 (Del.Super.Ct.1973)); *Searles v. Darling,* 83 A.2d 96, 99 (Del.1951) (emphasis added to original).

It is not within the prerogative of this Court to disturb lower court verdicts where there is competent evidence upon which their findings could reasonably be predicated. [FN22] Similarly, where some evidence supports an administrative finding, the Superior Court will not substitute its judgment in the matter for that rendered by the administrative body. [FN23] Concomitantly, *in the absence of some constitutional or statutory violation,* the Superior Court will reverse an administrative decision only when it is shown that the administrative body from which the appeal was taken abused its discretion. [FN24]

> FN22. *Young v. Saroukos,* 189 A.2d 437, 439 (Del.1963).
>
> FN23. *In re Artesian Water Co.,* 189 A.2d 435, 437 (Del.Super.Ct.1963).
>
> FN24. *Id.* (emphasis added).

In Appellant's case, there is no evidence that the Board abused its discretion. The Claims Deputy, Appeals Referee, and the Board, all concluded that Appellant had been discharged for just cause because Appellant's purported act of intentionally falsifying her employment application rose to a level of wanton or willful misconduct. This Court has consistently held that, where an employee intentionally (versus inadvertently) and falsely states she has never been convicted of a crime on an employment application, the false statement constitutes just cause for termination. [FN25] Hence, it appears that the Board found that there

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2004 WL 838715 (Del.Super.)  
**(Cite as: 2004 WL 838715 (Del.Super.))**

Page 6

existed substantial evidence to formulate its decision that the Appellant acted willfully, and with a wanton disregard. Normally, this Court's duty ends here, and need not go any further upon a finding of substantial evidence to substantiate the Board's decision. But, in this case, the Court finds that there exists a significant violation of a statutory precept, in this instance, its own Civil Rule 107(e). Therefore, despite the formidable "substantial evidence" found to exist by the Board, the Court has no other alternative but to reverse the Board's decision due to Appellee's failure to diligently prosecute and file its brief pursuant to Rule 107(e).

> FN25. *Wilmington Sav. Fund Soc'y v. Thompson,* 2000 WL 305453, at *3 (Del.Super.Ct.); *Bressi v. Eckerds Corp.,* 1994 WL 555471, at *2 (Del.Super.Ct.); *Kowalski v. Unemployment Ins. Appeal Bd.,* 1990 WL 28597, at *11 (Del.Super.Ct.).

**\*6** Notwithstanding these findings, the Court is not unsympathetic or callous in adjudging the Appellee, as the Court finds that it has fulfilled Appellee's expectations of due process rights. Due process requirements mandate that in any appeal from an administrative agency, the Court must make certain that the agency action satisfies the constitutional requirements of due process, i.e., procedural due process of law. Procedural due process requires that "[p]arties whose rights are to be affected[,] are entitled to be heard; and in order that they may enjoy that right[,] they must first be *notified*." [FN26] Parties must be adequately, properly, and lawfully notified of agency actions that affect, or will affect, their rights, privileges, and immunities. [FN27] It is also essential that the right to "notice" must be granted at a meaningful time and in a meaningful manner. [FN28] The Court, and the Prothonotary's Office, have made considerable efforts to provide notice to the Appellee. Additionally, it is an undeniable fact that Appellee's representative did receive amended notice of the appeal. Thus, procedural due process has been aptly served. Unfortunately, this is one of those rare instances when a party's unexplained inaction proves both disadvantageous to its cause, and results in a windfall for its adversary.

> FN26. *Tsipouras v. Tsipouras,* 677 A.2d 493, 496 (Del.1996) (quoting *Fuentes v. Shevin,* 407 U.S. 67, 80 (1972) (citations omitted) (emphasis added); *McGonigle v. Burns,* 2001 WL 1079036, at *1 (Del.Super.Ct.).
>
> FN27. *Fuentes,* 407 U.S. at 80 (relying on *Baldwin v. Hale,* 68 U.S. 223 (1863)).
>
> FN28. *Fuentes,* 407 U.S. at 80 (citing *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)); *Formosa Plastics Corp. v. Wilson,* 504 A.2d 1083, 1089 (Del.1986).

For the foregoing reasons, the May 5, 2003 decision of the Unemployment Insurance Appeal Board denying unemployment benefits to the Appellant is hereby REVERSED.

IT IS SO ORDERED.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d  
2004 WL 1731140 (Del.Super.)  
**(Cite as: 2004 WL 1731140 (Del.Super.))**

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
MICHAEL A. SINCLAIR, INC., Appellant,
v.
David E. RILEY, Appellee,
**No. Civ.A. 03A-09-007JRJ.**

Submitted April 1, 2004.
Decided July 30, 2004.

On Appeal from the Decision of the Unemployment Insurance Appeal Board. Decision Reversed.

Michael R. Ippoliti, Wilmington, DE, for Appellant Michael A. Sinclair, Inc.

David E. Riley, Wilmington, DE, Appellee, pro se.

ORDER

JURDEN, J.

**\*1** Upon consideration of the briefs submitted and the record in this case, it appears to the Court that:

*Factual and Procedural Background*
1. Appellant Michael A. Sinclair, Inc. ("Sinclair" or "Employer") appeals from a decision of the Unemployment Insurance Appeal Board ("UIAB" or "Board") which granted unemployment benefits to David E. Riley ("Riley" or "Claimant").
2. **Sinclair** initially employed **Riley** as a commercial truck driver in November of 2001. [FN1] Individuals who drive vehicles with a gross weight over 10,000 pounds are required to have a Medical Examiner's Certificate ("MEC" or "Certificate"). [FN2] On April 9, 2002, Riley underwent a medical examination for his MEC. [FN3] As a result of this examination, Riley was given a three-month temporary certification, rather than the standard two-year certification, and was advised to see a physician to determine whether he suffered from diabetes. [FN4] Riley was subsequently diagnosed with diabetes in May of 2002, [FN5] and his certification expired on July 9, 2002. Riley applied for a new Certificate, but was denied. On or about July 30, 2002, Riley "parked the truck" and his employment with Sinclair ended. [FN6] After briefly working elsewhere, Riley filed a claim for unemployment benefits with the Department of Labor on August 18, 2002. [FN7] On August 30, 2002, **Sinclair** tried to rehire **Riley** for the same truck driver position, but Riley refused, allegedly because he could not obtain his MEC and would be unable to perform the same truck-driving duties. [FN8]

>    FN1. *See* UIAB Record (Docket No 5) at 21.
>
>    FN2. *Id.* at 12.
>
>    FN3. *Id.*
>
>    FN4. *Id.*
>
>    FN5. *Id.* at 30.
>
>    FN6. *Id.* at 22-23.
>
>    FN7. *Id.* at 4.
>
>    FN8. *Id.* at 23.

3. In a February 4, 2003 decision, the Claims Deputy determined that the Claimant was disqualified from receiving benefits under 19 *Del. C.* § 3315(3) [FN9] because the medical documentation provided by the Claimant "showed no medical restriction that would affect the Claimant's job." [FN10]

>    FN9. 19 *Del. C.* § 3315(3) provides in pertinent part:
>    An individual shall be disqualified for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2004 WL 1731140 (Del.Super.)  
**(Cite as: 2004 WL 1731140 (Del.Super.))**

Page 2

benefits:
> (3) If the individual has refused to accept an offer of work for which the individual is reasonably fitted ... and the disqualification shall begin with the week in which the refusal occurred and shall continue for each week thereafter until the individual has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount....

> FN10. *See* Notice of Determination, UIAB Record at 7-8.

4. Riley appealed and an Appeals Referee affirmed. The Referee's decision states, in pertinent part:
The issue in this case is whether the claimant refused a suitable offer of work. Clearly, there was an offer of work. This work was identical to what the claimant had previously done for Sinclair. It is also clear that the claimant refused this job. The question then is whether the work was suitable for the claimant. Although the claimant testified that he is unable to obtain new certification due to his diabetes, he provided no medical documentation of this allegation. In the absence of such evidence, this tribunal cannot find that the offer of work was one for which the claimant was not reasonably fitted. Having refused the position, it must be concluded that he is disqualified from benefits by operation of the above-cited statute [19 *Del. C.* 3315(3) ]. [FN11]

> FN11. *See* Referee's Decision, UIAB Record at 13.

5. On June 25, 2003, the UIAB held a hearing after the Claimant appealed. Sinclair did not attend this hearing. [FN12] The Board reversed the Referee's decision because the Claimant provided documentation that he was diagnosed with diabetes. The Board found that the offer of another driving position was not a suitable offer of work because Riley's diabetes restricted his ability to obtain the necessary certification that would permit him to drive. [FN13] The Board decision became final on September 7, 2003. [FN14]

> FN12. Sinclair filed a motion for a rehearing, claiming that it never received notice of the first hearing. In an August 13, 2003 decision, the Board denied the Employer's motion for a new hearing because it determined that notice of the first hearing was properly mailed to the Employer's address of record and was not returned. *See* Board's August 13, 2003 Decision, UIAB Record at 67-68.

> FN13. *See* Board's Decision, UIAB Record at 41-42.

> FN14. *See* Board's Refusal of Rehearing (Docket No 1) at *Exhibit A.*

\*2 6. On September 17, 2003 the Employer timely filed an initial appeal of the Board decision to this Court. [FN15] On January 27, 2004 the Employer filed the Appellant's Opening Brief. [FN16] On February 27, 2004 a Delinquent Brief Notice was sent to the Claimant, warning that an answering brief needed to be filed or "the Court will decide the issue on the papers which have been filed if no further action of record is taken within ten (10) days from the receipt of this notice." [FN17] Having received no response from the Claimant, on March 25, 2004, the Court ordered a determination of the issue on the papers that were filed to that date. [FN18]

> FN15. *See* Notice of Appeal (Docket No 1) at 3.

> FN16. *See* Appellant's Opening Brief ("Employer's Op. Brief") (Docket No 8) at 1.

> FN17. *See* Final Delinquent Brief Notice (Docket No 10) at 1.

> FN18. *Id.*

*Standard of Review*

7. In reviewing a decision on appeal from the Unemployment Insurance Appeal Board, this Court must determine if the decision is supported by substantial evidence and is free from legal error.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                      Page 3
2004 WL 1731140 (Del.Super.)
**(Cite as: 2004 WL 1731140 (Del.Super.))**

[FN19] " 'Substantial evidence' means such relevant evidence as a reasonable mind might accept to support a conclusion." [FN20] Absent an abuse of discretion, this Court must uphold the Board's decision. [FN21] "Questions of credibility are exclusively within the province of the Board which heard the evidence. As an appellate court, it [is] not within the province of the Superior Court to weigh the evidence, determine questions of credibility or make its own factual findings." [FN22] The Court will only reverse a decision of the Board if its findings are not supported by substantial evidence, or where the Board has made a legal mistake. [FN23]

> FN19. *K-Mart v. Bowles,* C.A. No. 94A-10-007, 1995 Del.Super. LEXIS 175 (Mar. 23, 1995) (citing 29 *Del. C* § 10142(d); *Johnson v. Chrysler Corp.,* 213 A..2d 64 (Del.1965)).
>
> FN20. *Oceanport Ind. v. Wilmington Services,* 636 A.2d 892, 899 (Del.Super.Ct.1972).
>
> FN21. *Id.*
>
> FN22. *Unemployment Ins. Appeal Bd. v. Div. Of Unemployment Ins.,* 803 A.2d 931, 937 (Del.2002).
>
> FN23. *Delgado v. Unemployment Ins. Appeal. Bd.,* 295 A.2d 585 (Del.Super.1972).

*Discussion*

8. Under 19 *Del. C.* § 3315(8), claimants are disqualified from unemployment benefits "[i]f it shall be determined by the Department that total or partial unemployment is due to the individual's inability to work. Such disqualification [is] to terminate when the individual becomes able to work and available for work as determined by a doctor's Certificate and meets all other requirements under this title." [FN24] "[W]hile the unemployment insurance fund is an emergency fund provided for those individuals who have become unemployed through no fault of their own, the fund was designed to assist individuals who are unemployed primarily due to economic conditions. The fund and the unemployment insurance system were not intended to be a disability or illness insurers." [FN25]

> FN24. 19 *Del. C.* § 3315(8).
>
> FN25. *O'Neill v. Airborne Express,* UIAB Hearing No. 135523 at 3 (August, 21 2000). *See* Employer's Op. Brief at Tab 29.

9. Here, the Board found that because the Claimant was medically unable to obtain a MEC, the Claimant was no longer able to work as a licensed truck driver. [FN26] However, the Board erred in concluding that the only effect of this was to prevent the subsequent job offer from being a suitable offer for work. The Board should have also concluded that this disability left the Claimant unable and unavailable to work pursuant to 19 *Del. C.* § 3315(8). Consequently, it was an error of law for the Board to hold that the Claimant was qualified to receive unemployment benefits under the facts in the record.

> FN26. *See* UIAB Record at 42 ("The Claimant has demonstrated that he has Type II Diabetes which restricted his ability to obtain proper certification to permit him to drive.").

10. As an alternative grounds for reversal, Delaware Superior Court Rule 107(e) states:
***3** If any brief, memorandum, deposition, affidavit, or any other paper which is or should be part of a case pending in this Court, is not served and filed within the time and in the manner required by these Rules or in accordance with any order of the Court or stipulation of counsel, the Court may in its discretion, dismiss the proceeding if the plaintiff is in default, consider the motion as abandoned, or summarily deny or grant the motion, such as the situation may present itself, or take such other action as it deems necessary to expedite the disposition of the case. [FN27]

> FN27. Del.Super. Ct. Civ. R. 107(e).

In *Hunter v. First USA/Bank ONE,* this Court found that "Rule 107(e) inextricably vests in the Court the power to reverse the Board's decision for failure of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2004 WL 1731140 (Del.Super.)  
**(Cite as: 2004 WL 1731140 (Del.Super.))**

Page 4

the Appellee to file its answering brief." [FN28] Here, the Court is confronted with a factually similar case. As in *Hunter,* the Appellee was duly notified [FN29] and failed to explain his inaction. Accordingly, "the Court has no other alternative but to reverse the Board's decision due to the Appellee's failure to diligently prosecute and file its brief pursuant to Rule 107(e)." [FN30]

> FN28. *Hunter v. First USA/BANK ONE,* C.A. No. 03A-05-005 PLA, 2004 Del.Super. LEXIS 123 at *13 (April 15, 2004).
>
> FN29. Although, in the *Hunter* case, there was a subsequent notification by certified mail, this fails to distinguish these cases because that additional notification was prompted by a concern of a "significant clerical error [that] may have been made in the mailing process, potentially resulting in Appellee never receiving any type of notification of appeal." *Id* at *5.
>
> FN30. *Id* at *18.

11. For the reasons stated above, the decision of the Board that the Claimant is entitled to benefits is not free from legal error and is therefore REVERSED. IT IS SO ORDERED.

2004 WL 1731140 (Del.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.